FILED IN OPEN COURT
ON 2/22/18 NB
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CR-134-1BR

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>XAVIER MILTON EARQUHART )<br>    a/k/a Xavier Smart )<br>    a/k/a Xavier Akpan Smart )<br>    a/k/a Xzavier Erquhart )<br>    a/k/a Xzayvier Ernhart )<br>    a/k/a Milton Xavier )<br>    a/k/a David Imrich )<br>    a/k/a Kevin Liols )<br>    a/k/a Michael Powell )<br>    a/k/a Melvin Hailstones )<br>    a/k/a Rety Humos )<br>    a/k/a Milton Monn ) | SUPERSEDING INDICTMENT |

The Grand Jury charges that:

## INTRODUCTION

1. At all times material to this Superseding Indictment, XAVIER MILTON EARQUHART was an individual who directly and indirectly purchased and disposed of real property located in the Eastern District of North Carolina and elsewhere.

2. Between 2013 and 2016, EARQUHART executed various schemes to deprive financial institutions, other entities, and individuals of money and property through the purchase and sale of

1

real property, and through the filing of fraudulent documents affecting the mortgage lending process. EARQUHART then channeled the proceeds of the real estate sales into bank accounts he controlled, and further converted the proceeds into valuable assets, such as gold and recording studio equipment.

## COUNTS 1 THROUGH 7
## 18 U.S.C. § 1344

3. Beginning at a time unknown, but no later than November of 2010 and continuing to a time unknown, but no earlier than August of 2013, within the Eastern District of North Carolina, and elsewhere, the defendant, XAVIER MILTON EARQUHART, knowingly executed and attempted to execute a scheme: (1) to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20; and (2) to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

4. EARQUHART engaged in a scheme to fraudulently acquire title to a dwelling at 2732 Knowles Street in Raleigh, North Carolina, and then to obtain loans from various financial institutions using the dwelling as collateral.

2

5. In or about 1993 G.D. purchased the property at 2732 Knowles Street in Raleigh, North Carolina (hereinafter "Knowles Street"). The property was rented to a tenant who was later evicted for nonpayment of rent. After the eviction, Knowles Street sat vacant for several years.

6. On or about November 30, 2010, EARQUHART took a North Carolina General Warranty Deed relating to Knowles Street to J.C. to be notarized. The deed purported to convey title from G.D. to "Abraham Elijah Ishmael." J.C. notarized the deed outside the presence of G.D. or the person identified as "Ishmael". In fact, G.D. did not convey title to Knowles Street to "Ishmael", and her signature on the deed was forged. The deed was recorded at the Wake County Register of Deeds on December 13, 2010.

7. On or about February 2, 2011, EARQUHART took another North Carolina General Warranty Deed relating to Knowles Street to J.C. to be notarized. The deed purported to convey title from "Ishmael" to Executive Investment Group, which was an entity formed and controlled by EARQUHART. J.C. notarized the deed outside the presence of "Ishmael". The deed was recorded at the Wake County Register of Deeds on February 14, 2011.

8. On April 11, 2013, a deed was recorded at the Wake County Register of Deeds conveying title to Knowles Street from Executive

3

Investment Group to EARQUHART.

9. Thereafter, EARQUHART attempted to obtain $496,200 in loan proceeds from six financial institutions by offering Knowles Street as collateral. In fact, as EARQUHART then and there knew, he was not the rightful owner of Knowles Street as G.D. never conveyed the property.

10. EARQUHART successfully acquired loans from three financial institutions, reaping $185,200 in loan proceeds.

## EXECUTION OF THE SCHEME

11. On or about the dates set forth in the table below, each entry constituting a separate count of this Superseding Indictment, within the Eastern District of North Carolina and elsewhere, the Defendant, XAVIER MILTON EARQUHART, executed and attempted to execute the scheme and artifice described above, in that the he made a loan application to each of the financial institutions, as that term is defined in Title 18, United States Code, Section 20, below, offering Knowles Street as collateral:

| COUNT | DATE | VICTIM BANK | LOAN AMOUNT |
|---|---|---|---|
| 1 | 5/28/2013 | State Employees Credit Union | $90,000 |
| 2 | 5/29/2013 | Branch Banking and Trust (BB&T) | $75,000 |
| 3 | 5/29/2013 | Regions Bank | $76,000 |
| 4 | 6/14/2013 | TrustAtlantic Bank | $75,000 |
| 5 | 7/31/2013 | Regions Bank | $70,000 |
| 6 | 8/9/2013 | SunTrust Bank | $58,000 |
| 7 | 6/13/2013 | Capital Bank | $52,000 |

4

Each of the transactions identified in the foregoing table constituting a separate violation of Title 18, United States Code, Section 1344.

## COUNTS 8 THROUGH 10
## 18 U.S.C. §§ 1344 and 2

### THE SCHEME

12. Beginning at a time unknown, but no later than November of 2014, and continuing to a time unknown, but no earlier than July of 2016, within the Eastern District of North Carolina, and elsewhere, the defendant, XAVIER MILTON EARQUHART, aiding and abetting others known and unknown to the grand jury, knowingly executed and attempted to execute a scheme to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, as defined in Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

13. EARQUHART's scheme consisted of the following steps:
a) A Homeowner's Association (HOA) foreclosed on a property due to the nonpayment of HOA dues. Properties fitting this description are referred to herein as the "Foreclosed Properties."

b) EARQUHART formed a trust or corporate legal entity,

5

referred to herein collectively as a "Holding Company," for the purpose of temporarily taking title to a Foreclosed Property. EARQUHART usually formed the Holding Companies in the State of Delaware by using an incorporation company referred to herein as H.B.S. The names of the Holding Companies often contained the address of the foreclosed property or the name of the current owner of the foreclosed property. When forming the Holding Companies, EARQUHART supplied "Gmail" addresses to H.B.S. H.B.S. used email to send and receive messages concerning corporate formations to and from clients located across the United States.

c) Once formed, EARQUHART opened a bank account in the name of the Holding Company. The sole signatory on the Holding Company bank account was EARQUHART.

d) The Foreclosed Property was put up for auction by the HOA or its representative. EARQUHART used an alias to bid on the Foreclosed Property in the name of a Holding Company.

e) After receiving a winning bid for the Foreclosed Property, the HOA deeded its interest in the foreclosed property to the Holding Company.

f) Despite the HOA foreclosure, a financial institution, or assignee of the same, maintained a first priority lien on the Foreclosed Property. In most instances, the first priority lien was a Deed of Trust given to the lender by the owner of the foreclosed property as collateral on a purchase-money mortgage. In some instances, the purchase-money lender assigned the lien to a third party, such as a trust or other entity holding a pool of asset-backed securities. The banks, lenders, and their assignees, who held the aforementioned first priority liens, are referred to herein as the "Victim Lienholders." EARQUHART caused a fraudulent Satisfaction of Security Instrument (hereinafter "Fraudulent Satisfaction") to be filed and recorded by the Register of Deeds Office located in the same county where the Foreclosed Property was located. The Fraudulent Satisfaction purported to extinguish any claim to the Foreclosed Property by the Victim Lienholders.

6

g)  Purporting to have clear title to the Foreclosed Property in the name of the Holding Company, EARQUHART caused the Holding Company to sell the Foreclosed Property to a third party buyer.

h)  EARQUHART reaped the financial benefit of the sale of the Foreclosed Property to the third party buyer. Upon receiving funds from the sale of the Foreclosed Property, EARQUHART immediately liquidated the Holding Company bank accounts.

14. In furtherance of the scheme, the defendant engaged in the following real estate transactions:

a)  Between February 2015 and March of 2015, EARQUHART obtained title to 1216 Cantlemere Street in Wake Forest, North Carolina, by causing a North Carolina Trust, known as the Ferguson Family Irrevocable Trust of 2015, to become the highest bidder at an HOA auction. An existing lien on 1216 Cantlemere Street was fraudulently satisfied, and EARQUHART caused the Ferguson Family Irrevocable Trust of 2015 to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a BB&T bank account he opened in the name of the holding company.

b)  Between March of 2015 and May of 2015, EARQUHART obtained title to 2823 Wellington Ridge Loop in Cary, North Carolina, by causing a Delaware corporation, known as Gunnell, Winter Elyse & Family Corporation, to become the highest bidder at an HOA auction. An existing lien on 2823 Wellington Ridge Loop was fraudulently satisfied, and EARQUHART caused Gunnell, Winter Elyse & Family Corporation to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a Wells Fargo bank account he opened in the name of Gunnell, Winter Elyse & Family Corporation Trust.

c)  Between April 2015 and June of 2015, EARQUHART obtained title to 505 E. 6th Street #1306 in Charlotte, North Carolina, by causing a Delaware corporation, known as

7

Case 5:17-cr-00134-BR   Document 81   Filed 02/22/18   Page 7 of 16

Lateef J and Son's Family Condo LLC, to become the highest bidder at an HOA auction. An existing lien on 505 E. 6th Street #1306 was fraudulently satisfied, and EARQUHART caused Lateef J and Son's Family Condo LLC to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a Bank of America bank account he opened at the Crabtree Valley Branch in Raleigh, North Carolina, in the name of the holding company.

d) Between April 2015 and July of 2015, EARQUHART obtained title to 14716 Via Sorrento Drive in Charlotte, North Carolina by causing a Delaware corporation, known as Gaydos & Family 14716 Via Sorrento Condominium Inc., to become the highest bidder at an HOA auction. An existing lien on 14716 Via Sorrento Drive was fraudulently satisfied, and EARQUHART caused Gaydos & Family 14716 Via Sorrento Condominium Inc. to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a PNC Bank account he opened in the name of the holding company.

e) Between November of 2014 and August of 2015, EARQUHART obtained title to 5213 Gable Ridge, Holly Springs, North Carolina by causing a trust, known as the 5213 Gable Ridge Lane Bearer Bond Instrument Payable to Bearer Series 2014-11, to become the highest bidder at an HOA auction. An existing lien on 5213 Gable Ridge was fraudulently satisfied. EARQUHART formed a Delaware corporation named Bridgewater & Associates Absolute Auction Estate Buyers and Sellers Hedge Fund and caused title to 5213 Gable Ridge to be conveyed to this same entity. EARQUHART then caused Bridgewater & Associates Absolute Auction Estate Buyers and Sellers Hedge Fund to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a Bank of America bank account he opened in the name of Bridgewater & Associates Absolute Auction Estate Buyers and Sellers Hedge Fund.

f) Between March of 2015 and August of 2015, EARQUHART obtained title to 14109 Arbor Ridge Drive in Charlotte, North Carolina by causing a Delaware corporation, known

8

as The Stanton E 14109 Arbor Ridge Dr Inc., to become the highest bidder at an HOA auction. An existing lien on 14109 Arbor Ridge Drive was fraudulently satisfied, and EARQUHART caused The Stanton E 14109 Arbor Ridge Dr Inc. to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a Bank of America bank account he opened in the name of the holding company.

g) Between December of 2015 and March of 2016, the defendant obtained title to 9007 Holland Park Lane in Charlotte, North Carolina by causing a Delaware limited liability company known as Keith H Property LLC, to become the highest bidder at an HOA auction. An existing lien on 9007 Holland Park Lane was fraudulently satisfied, and EARQUHART caused Keith H Property LLC to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a PNC Bank account he opened in the name of the holding company.

h) Between March of 2016 and July of 2016, EARQUHART obtained title to 4818 Swans Mill Drive in Durham, North Carolina by causing a Delaware limited liability company, known as S. Hairston & Family Home Place LLC, to become the highest bidder at an HOA auction. An existing lien on 4818 Swans Mill Drive was fraudulently satisfied, and EARQUHART caused S. Hairston & Family Home Place LLC to sell the property to an unwitting third party. EARQUHART reaped the proceeds of the sale by withdrawing the funds from a Bank of America account he opened in the name of the holding company.

15. It was further part of the scheme that after obtaining title to 1216 Cantlemere Street, EARQUHART utilized this same street address in the Eastern District of North Carolina for the purposes of creating several of the Delaware entities described in the preceding paragraph, and otherwise carrying out the scheme.

16. It was part of the scheme that EARQUHART used various

9

individual and corporate aliases to conceal his identity when carrying out the transactions. Nevertheless, EARQUHART utilized common email addresses when creating and managing several of the Delaware entities identified in the preceding paragraph.

17. It was further part of the scheme that EARQUHART supplied to banks and others various fictitious addresses for the receipt of documents and correspondence relating to the purchase and sale of the foreclosed properties. In many instances, however, EARQUHART utilized a P.O. Box he operated in Zebulon, North Carolina, for the purposes of carrying out the scheme.

18. It was further part of the scheme that after creating the Holding Companies identified in the preceding paragraph, and carrying out the transactions, the defendant ceased to operate the companies or to communicate with H.B.S.

EXECUTION OF THE SCHEME

19. On or about the dates set forth in the table below, each entry constituting a separate count of this Superseding Indictment, within the Eastern District of North Carolina and elsewhere, the Defendant, XAVIER MILTON EARQUHART, aiding and abetting others known and unknown to the grand jury, executed and attempted to execute the scheme and artifice described above, in that the he caused a Foreclosed Property to be sold to a Victim

10

Buyer through a Holding Company when, in fact, the Victim Lienholder, a financial institution as defined in Title 18, United States Code, Section 20, maintained a lien that was extinguished by means of a Fraudulent Satisfaction:

| COUNT | FORECLOSED PROPERTY | DATES | HOLDING COMPANY | VICTIM LIENHOLDER |
|---|---|---|---|---|
| 8 | 2823 Wellington Ridge Loop Cary, NC | 3/2015 to 5/2015 | Gunnell, Winter Elyse & Family Corporation | Bank of New York Mellon |
| 9 | 505 E. 6th Street, #1306 Charlotte, NC | 4/2015 to 6/2015 | Lateef J and Son's Family Condo LLC | Bank of America, N.A. |
| 10 | 5213 Gable Ridge, Holly Springs, NC | 11/2014 to 8/2015 | Bridgewater & Associates Absolute Auction Estate Buyers and Sellers Hedge Fund | Nationstar Mortgage, LLC |

Each of the transactions identified in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1344 and 2.

### COUNTS 11 THROUGH 12
### 18 U.S.C. § 1957

20. Paragraphs 1 through 19 are realleged and incorporated herein as though fully set forth in this Count.

21. After receiving funds from the sale of the Foreclosed Properties into the Holding Company bank accounts, EARQUHART

11

transferred and converted the funds into other anonymized monetary instruments, such as cashier's checks. After receiving the cashier's checks, EARQUHART took the checks to various other banks to convert them to cash or to deposit them into bank accounts that EARQUHART opened in the name of other entities. In many instances, EARQUHART took the checks to different branches of the same bank on the same day or different days to convert or deposit the proceeds.

22. EARQUHART created Delaware entities Xavier Earquhart LLC and Property and Bullion LLC for the purposes of receiving the proceeds of the scheme. After gathering the proceeds of the scheme into bank accounts opened in the name of these entities, EARQUHART utilized the proceeds to purchase valuable items, such as studio recording equipment and gold bullion.

23. On or about the dates listed in the following table, in the Eastern District of North Carolina and elsewhere the defendant, XAVIER MILTON EARQUHART, knowingly engaged in the monetary transactions identified in each row of the table, each involving criminally derived property, where the value of the property exceeded $10,000, and said property was derived from a Specified Unlawful Activity (SUA), to wit, Bank Fraud, in violation of Title 18, United States Code, Section 1344:

| COUNT | DATE | MONETARY TRANSACTION | LINKED SUA |
|---|---|---|---|
| 11 | 6/12/2015 | At the Crabtree Valley branch of Bank of America in Raleigh, North Carolina, EARQUHART purchased eight official checks totaling $200,000, using funds from an account in the name of Lateef J and Son's Family Condo, LLC. | Count 9 |
| 12 | 7/31/2015 | After purchasing five official checks totaling $228,290 using funds from an account in the name of Bridgewater & Associates Absolute Auction Estate Buyers and Sellers Hedge Fund, EARQUHART cashed one official check totaling $45,658 at the Spring Forest Road branch of Bank of America in Raleigh. | Count 10 |

Each of the transactions identified in the foregoing table constituting a separate violation of Title 18, United States Code, Section 1957.

## COUNT 13
## 18 U.S.C. §§ 1028A(a)(1) and 2

24. Paragraphs 12 through 19 are realleged and incorporated herein as though fully set forth in this Count.

25. Between in or about December 5, 2014 and January 12, 2015, in the Eastern District of North Carolina, the defendant, XAVIER MILTON EARQUHART, aiding and abetting others unknown to the grand jury, did knowingly possess, transfer, and use, and did

13

willfully cause others to possess, transfer, and use, without lawful authority, certain means of identification belonging to other persons, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, the felony offense identified in Count 10 herein, knowing that said means of identification belonged to J.M. and A.D.M., all in violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

[Remainder of page intentionally blank.]

## FORFEITURE NOTICE

Upon conviction of the offenses in Counts One through Twelve of the Superseding Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A) any property constituting, or derived from the gross proceeds obtained, directly or indirectly, as a result of the said offenses, including, but not limited to:

(A) $1,304,804.71, constituting the gross proceeds of the charged offenses;

(B) $291,903.31 in gold bullion coins; and

(C) Recording Studio Equipment:

   a. 2 GENELEC 8351APM Monitors

   b. 1 GENELEC 7360APM Smart Active Sub

   c. 1 GLM Loudspeaker Manager V2.0

   d. 1 Sony C800GPAC

   e. 1 SSL AWS 948 Demo, SN SWS4237

In addition, upon conviction of the offenses in Counts Eleven and Twelve of the Superseding Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1) any property, real or personal, involved in such offenses, or any property traceable to such property. The property includes, but is not limited to the same property

15

identified above.

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

Foreperson

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

Date: 2/22/18

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

16